# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PETER BARKER, | ) |
| Plaintiff, | ) |
| | ) No. 13 C 1272 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| ATLANTIC PACIFIC LINES and MUNISH SACHDEV, | ) |
| Defendants. | ) |

## AMENDED OPINION AND ORDER

Plaintiff, Peter Barker, filed a five-count complaint against defendants, Atlantic Pacific Lines ("APL") and Munish Sachdev (collectively referred to as "defendants"), alleging claims for retaliatory discharge, violation of the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. 174/1 *et seq.*, violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et. seq.*, and breach of contract.[1] Sachdev has moved to dismiss for lack of personal jurisdiction [dkt. 12] under Federal Rule of Civil Procedure 12(b)(2), and APL and Sachdev moved to dismiss [dkt. 14] under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the following reasons, Sachdev's motion to dismiss for lack of personal jurisdiction [dkt. 12] is denied and defendants' motion to dismiss for failure to state a claim [dkt. 14] is granted in part and denied in part.

## BACKGROUND[2]

Atlantic Pacific Lines ("APL") is a privately owned nonvessel ocean common carrier offering full export and import services, including warehousing and distribution. APL is

---

[1] The court has subject matter jurisdiction under 28 U.S.C. § 1332 and venue is appropriate under 28 U.S.C. § 1391(b).

[2] The following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motion. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002).

incorporated in New Jersey and serves commercial customers out of its principal place of business in West Long Branch, New Jersey, and from offices in Michigan, Illinois, New York, India, Italy, and China. APL's Illinois office, opened in 2008, has one employee and leased office space. Sachdev is a citizen of New Jersey and the owner and president of APL.

In September 2010, Barker began working as the vice president of sales for APL in its Illinois office. When APL hired Barker, it entered into an agreement to pay him an annual salary of $90,000. Barker continued working for APL in connection with that agreement. APL also provided Barker with employee benefits including health insurance and a car allowance. APL issued Barker traditional paychecks and withheld the requisite federal and state payroll taxes and reported Barker's yearly earnings on an IRS W-2 Form.[3] As vice president of sales, Barker reported directly to Sachdev. Barker's responsibilities included calling prospective and existing clients to sell APL's products and services. APL provided Barker with a laptop computer, office telephone, printer, facsimile machine and a company credit card. APL also paid for Barker's business-related expenses and his cellular telephone. Barker consistently received positive feedback on his sales and job performance and received salary increases. In early October 2012, Barker's yearly salary was $225,000.

In September 2012, Sachdev offered Barker two options: (1) he could remain an employee but APL would cut his salary by $75,000 or (2) he could choose to become an independent contractor and APL would pay him a commission based salary. Barker questioned the legality of his reclassification to an independent contractor. Without informing Barker, APL unilaterally reclassified Barker as an independent contractor. Although labeled independent contractor, Barker's day-to-day job responsibilities remained the same; he continued performing

---

[3] The Internal Revenue Code ("IRC") and the Illinois Income Tax Act ("IITA") require that employers withhold payroll taxes. *See* 26 U.S.C. §§ 3102(a), 3402; 35 Ill. Comp. Stat. 5/701. Violations of the IRS and ITA carry criminal penalties. *See* 26 U.S.C. § 2702; 35 Ill. Comp. Stat. 5/1301.

the same duties, reported to Sachdev, and received the same employee benefits and car allowance. Barker learned about this change in employment status after receiving a paycheck, which reflected a lower salary and failed to make federal and state payroll tax withholdings.

Sachdev told Barker that he changed Barker's employment status to avoid paying payroll taxes. Barker questioned how he could receive employee health insurance yet be denied employee status. Barker additionally told Sachdev that his paychecks after the reclassification did not reflect the full amount of commissions to which Barker claimed he was entitled. Throughout the remainder of October and into November 2012, Barker continued asking defendants how they calculated his salary. Defendants ultimately acquiesced to Barker's requests and provided him with a summary of his sales. This summary, however, was inaccurate and omitted sales that Barker alleges that he made. Barker asked for an explanation but defendants failed to provide one.

On November 27, 2012, Barker requested information from Sachdev on his sales and commissions so he could prepare invoices to APL. Barker explained to Sachdev that he needed this documentation in the event that the IRS ever audited Barker. As an independent contractor, Barker was responsible for accounting for his earnings for tax purposes. On November 29, 2012, Barker called Sachdev again for an explanation regarding how defendants calculated his commissions. During this conversation, Sachdev became upset and told Barker that he should have accepted the fixed salary option. In the same conversation, Sachdev terminated Barker's employment despite having told Barker a few days earlier that he was having an outstanding sales month. After his termination, Barker requested his final paycheck, which defendants refused to provide. In February 2013, defendants remitted Barker's final paycheck without an explanation regarding why it took several months to issue. Barker claims that he is still owed

part of his annual salary and sales commissions after being reclassified as an independent contractor.

## LEGAL STANDARD

Rule 12(b)(2) permits dismissal of a claim based on lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The burden of proof on jurisdictional challenges is on the party asserting jurisdiction. *United Phosphorous, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *RAR, Inc.* v. *Turner*, 107 F.3d 1272, 1276 (7th Cir. 1997). In considering a motion to dismiss for lack of personal jurisdiction, the court may review affidavits submitted by the parties. *Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on th motion without a hearing, however, the plaintiff need only establish a "*prima facie* case of personal jurisdiction." *Id*. at 782 (quoting *Hyatt Int'l Corp.* v. *Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). The court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" of the plaintiff. *Central States, Se. & Sw. Areas Pension Fund* v. *Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor* v. *Bd. of Regents of N. Ill. Univ.*, 711 F.3d 1387, 1393 (7th Cir. 1993)). Disputes concerning relevant facts are resolved in favor of the plaintiff. *Purdue*, 338 F.3d at 782 (citing *Nelson* v. *Park Indus.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the

requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

**I.     Personal Jurisdiction**

Sachdev argues that the court lacks personal jurisdiction because he is a New Jersey citizen with attenuated contacts with Illinois. Sachdev included a sworn declaration providing that he had only been to Illinois twice since APL opened its Illinois office and that the negotiations leading to APL's hiring Barker occurred in Wisconsin, not Illinois. Assuming, *arguendo*, that personal jurisdiction exists, Sachdev additionally argues that he was acting on behalf of APL and the fiduciary shield doctrine thus precludes the court from exercising personal jurisdiction over him.

Barker alleges that Sachdev breached his employment contract and committed tortious conduct by reclassifying Barker to an independent contractor, for refusing to pay the entirety of his salary, and firing him for complaining about the conduct. As Sachdev directed this conduct towards Illinois, argues Barker, the court can properly exercise personal jurisdiction over Sachdev. Barker further argues that Sachdev had a personal financial stake in the decision to reclassify and terminate Barker's employment and that the amount of discretion he exercised in doing so belies the applicability of the fiduciary shield doctrine.

A.  Sachdev's Contacts with Illinois

The court, sitting in diversity, has personal jurisdiction over Sachdev to the extent that an Illinois court could exercise personal jurisdiction. *See Klump* v. *Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). Illinois allows for personal jurisdiction to the extent authorized by the Fourteenth Amendment's due process clause, which merges the federal constitutional and state statutory inquiries together. *Tamburo* v. *Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); 735 Ill. Comp. Stat. 5/2-209(c). Under the Illinois long-arm statute, personal jurisdiction can be general or specific. *uBid, Inc.* v. *GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). General jurisdiction is a demanding standard in which a defendant can be haled into an Illinois court if they have "'continuous and systematic general business contacts' with the forum state." *uBid*, 623 F.3d at 425–26 (quoting *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 415–16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).[4]

Specific jurisdiction, on the other hand, grows out of a defendant's particular contacts with the state and is present when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702; *see Mobile Anesthesiologists Chicago, LLC* v. *Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). The exercise of specific jurisdiction must also comport with the traditional notions of fair play and substantial justice, *see Felland* v. *Clifton*, 682 F.3d 665, 673 (7th Cir. 2012), taking into account "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Burger King Corp.* v. *Rudzewicz,* 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal quotation marks omitted).

---

[4]  Barker does not argue that general jurisdiction is proper over Sachdev.

In determining whether a defendant purposefully directed his activities at the forum state, courts look to whether the defendant engaged in (1) intentional conduct (or intentional and allegedly tortious conduct), (2) expressly aimed at the forum state, (3) with the knowledge that such conduct would injure the plaintiff in the forum state. *Tamburo*, 601 F.3d at 703 (citing *Calder* v. *Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). Barker alleges two claims against for Sachdev for violation of the IWPCA premised on Sachdev's alleged failure to pay Barker's total compensation for work performed in violation of an agreement between the parties. *See Tamburo*, 601 F.3d at 702 ("Personal jurisdiction in breach-of-contract actions often turns on whether the defendant purposefully availed himself of the privilege of conducting business or engaging in a transaction in the forum state.") (internal quotation marks omitted).

Sachdev argues that any injury Barker suffered is too attenuated from Sachdev's fleeting contacts with Illinois. Barker, however, alleges that his IWPCA claim for lost wages directly resulted from his reclassification to an independent contractor. The reclassification, delivered to Barker by Sachdev as an ultimatum, also ran afoul of the parties' prior agreement detailing Barker's pay schedule and resulted in defendants paying Barker less than he was owed. Barker further alleges that defendants failed to pay him the total amount of commissions owed after the reclassification, and when he attempted to obtain information from Sachdev regarding his sales figures, Sachdev told Barker that he should have accepted the fixed salary option and then terminated him. These allegations reveal that Sachdev played a role in quantifying the wages Barker claims that he is still owed and Sachdev's alleged failure to pay those wages substantiates Barker's IWPCA claims. Exercising specific personal jurisdiction over Sachdev is thus appropriate because Barker allege that Sachdev was complicit in the reclassification decision and

had a role in determining Barker's commission-based salary.[5]  Because Sachdev communicated the reasons for APL's compensation decisions to Barker who was working for APL in Illinois at the time, Sachdev reasonably could have anticipated being haled into an Illinois court in connection with a dispute regarding the total wages Barker alleges defendants failed to pay.  *See Leong* v. *SAP Am., Inc.*, 901 F. Supp. 2d 1058, 1064 (N.D. Ill. 2012) (plaintiff's allegations that non-resident defendant was involved in the decision not to correct her salary and communicated that decision to plaintiff in Illinois were sufficient to confer personal jurisdiction); *Farmer* v. *DirectSat USA, LLC*, No. 08 C 3962, 2010 WL 380697, at *9 (N.D. Ill. Jan. 28, 2010) (specific personal jurisdiction appropriate over defendants who instituted wage and hour policies and had a direct role in establishing the defendant company's Illinois office).

Allowing this lawsuit against Sachdev to proceed in Illinois does not run afoul of traditional notions of fair play and substantial justice.  That Sachdev may face a burden litigating the case in Illinois, by itself, does not preclude personal jurisdiction as "out-of-state defendants *always* face such a burden."  *Felland*, 682 F.3d at 677.  Illinois has a strong interest in resolving the dispute because the underlying facts giving rise to this lawsuit occurred here.  As a citizen of Illinois, Barker also has an interest in having the case litigated in his home state.  Judicial efficiency also militates in favor of exercising personal jurisdiction over Sachdev as his conduct

---

[5]  Sachdev relies on decisions by judges in this court granting motions to dismiss for lack of personal jurisdiction over non-resident individuals in cases including IWPCA claims; however, the facts of the case at bar are distinguishable from all of these cases.  *See, e.g.*, *Chen* v. *Quark Biotech, Inc.*, No. 03 C 5729, 2003 WL 22995163, at *5 (N.D. Ill. Dec. 15, 2003) (none of the plaintiff's claims for unpaid wages were for work performed in Illinois); *Allman* v. *McGann*, 02 C 7442, 2003 WL 1811531, at *5 (N.D. Ill. April 4, 2003) ("[The defendant] has never had any contact with [the plaintiff], whether by way of telephone, mail, or electronic communication."); *McMurray* v. *Improvenet, Inc.*, No. 00 C 7137, 2001 WL 561376, at *3 (N.D. Ill. May 22, 2001) (Illinois plaintiff's allegations regarding unsubstantiated telephone conversations with California defendant and a brief conversation in Illinois regarding the plaintiff's outstanding commissions were not sufficient contacts to make the defendant amenable to personal jurisdiction in Illinois); *Krok* v. *Burns & Wilcox, Ltd.*, No. 98 C 5902, 1999 WL 262125, at *4 (N.D. Ill. April 16, 1999) (defendants' termination of plaintiff did not give rise to his wage dispute claim under the IWPCA).

is intertwined with Barker's claims against APL (as to which personal jurisdiction is undisputed).

B.   **The Fiduciary Shield Doctrine**

Moreover, Sachdev contends that the fiduciary shield doctrine precludes the court from exercising personal jurisdiction because he was acting on behalf of APL when communicating with Barker.  "[T]he fiduciary shield doctrine prevents courts from asserting jurisdiction over a person on the basis of acts taken by that person not on his own behalf, but on behalf of his employer." *Rollins* v. *Ellwood*, 565 N.E. 2d 1302, 1306, 141 Ill. 2d 244, 152 Ill. Dec. 384 (1990).  The doctrine is not an absolute right but, rather, an equitable and discretionary doctrine. *C.S.B. Commodities, Inc.* v. *Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 847 (N.D. Ill. 2009) (internal citation omitted).  In determining whether to apply the fiduciary shield doctrine, courts looks to whether personal gain motivated the non-resident defendant's actions and whether the defendant's actions were discretionary.  *See Rice* v. *Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994); *Sommese* v. *Am. Bank & Trust Co. N.A.*, No. 11 C 2827, 2012 WL 3006824, at *3 (N.D. Ill. July 23, 2012).

Barker alleges that Sachdev stood personally to gain by reclassifying Barker's employment status to avoid payroll taxes because Sachdev had an ownership interest in APL.  In addition, although he worked for APL, Sachdev's dual role as president and owner provided him with discretionary authority over personnel matters, evidenced by Sachdev's terminating Barker's employment.  *See Sommese,* 2012 WL 30006824, at *5 ("[C]ourts do not consider it unfair to exercise jurisdiction over an individual when the actions giving rise to personal jurisdiction are discretionary."); *Brujis* v. *Shaw*, 876 F. Supp. 975, 978 (N.D. Ill. 1995) ("[T]he shield should not apply where the employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction.") (internal quotation marks

omitted). Sachdev's roles as owner and president combined with the oversight those titles provided him in operating APL undercut Sachdev's argument that he merely operated on behalf of APL. Accordingly, Sachdev cannot rely on the fiduciary shield doctrine, and therefore, his motion to dismiss for lack of personal jurisdiction is denied.

## II. Retaliatory Discharge Claim (Count I)

Barker alleges that APL is liable for retaliatory discharge because it terminated his employment for protesting alleged illegal conduct. Defendants argue that the IWA abrogates the common law tort of retaliatory discharge under Illinois law, and alternatively, that Barker inadequately pleaded the claim.

The tort of retaliatory discharge prohibits an employer for discharging an employee in retaliation for engaging in conduct protected by public policy. *See Pratt* v. *Caterpillar Tractor Co.,* 500 N.E.2d 1001, 1002, 149 Ill. App.3d 588, 102 Ill. Dec. 900 (1986). To establish a prima facie case of retaliatory discharge, a plaintiff must allege that he was terminated in retaliation for his actions and that the discharge violates a clear mandate of public policy. *Gomez* v. *The Finishing Co.,* 861 N.E.2d 189, 196, 369 Ill. App. 3d 711, 308 Ill. Dec. 124 (2006). Illinois public policy favors the reporting of crimes to employers and protects employees who do so in the workplace from termination as a result. *See Belline* v. *K-Mart Corp.*, 940 F.2d 184, 187 (7th Cir. 1991). In a similar vein, the IWA prohibits an employer from retaliating against an employee for "disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 Ill. Comp. Stat. 174/15(b).

Defendants argue that the IWA abrogates the common law tort of retaliatory discharge. Although the Illinois Supreme Court has not spoken on this issue, the Illinois appellate courts have held that the IWA did not abrogate retaliatory discharge claims in instances where an

employee is terminated for reporting illegal conduct to their employer (as opposed to law enforcement). *See Michael* v. *Precision Alliance Grp.*, LLC, 952 N.E. 2d 682, 688, 2011 IL App (5th) 100089, 351 Ill. Dec. 890 (2011) ("[I]n no instance has Illinois required an employee to make a direct report to a government agency . . . Instead, when courts evaluate the intent of employees, the test has been whether the plaintiffs acted on a good-faith belief that an employer was violating the law.") (internal citation omitted); *Sardiga* v. *N. Trust Co.*, 948 N.E. 2d 652, 657–58, 409 Ill. App. 3d 56, 350 Ill. Dec. 372 (2011) ("When an employee complains to a supervisor, as opposed to a government agency, and is terminated as a result, a common law claim of retaliatory discharge arises, with which [the IWA] does not interfere."); *Callahan* v. *Edgewater Care & Rehabilitation Ctr., Inc.*, 872 N.E.2d 551, 554, 374 Ill. App. 3d 630, Ill. Dec. 568 (2007) ("[N]othing in the language of the [IWA] or its legislative history even suggests that the legislature intended to repeal or preempt the common-law rights of an individual discharged for reported illegal activities to her superiors . . . The fact that individuals discharged in retaliation for reporting illegal activities to their superiors have no right of action under the [IWA] does not compel the conclusion that they no right of action at all.").[6] Barker's retaliatory discharge claim is based on his disavowal of APL's allegedly illegal maneuvering to avoid federal and state tax laws to Sachdev and his resulting termination. The IWA did not abrogate the common law's protection of this type of conduct. *See Stiles* v. *Int'l Bioresources*, 726 F. Supp. 2d 944, 950–51 (N.D. Ill. 2010) ("The statute and common-law action cover distinct

---

[6] Defendants rely on the undersigned judge's opinion in *Bustamante* v. *Tin, Inc.,* No. 07 C 970, 2008 WL 360786, at *5 (N.D. Ill. 2008) , which stated that the common law tort of retaliatory discharge did not protect employees who make internal complaint to their employers (as opposed to law enforcement) and dismissed the plaintiff's retaliatory discharge claim. In *Babych* v. *Pyschiatric Solutions, Inc.*, No. 09 C 8000, 2010 WL 3547981, at *1 (N.D. Ill. Sept. 7, 2000), the undersigned recognized the split of authority on this issue noting that Illinois courts have allowed retaliatory discharge claims to proceed where an employee reports illegal conduct on to the employer. In light of the Illinois appellate courts reasoning on this issue, the court finds that the IWA does not abrogate the common law tort of retaliatory discharge in cases where an employee alleges that an employer retaliated against him for internally reporting illegal activity.

subjects (although they may overlap).").

Barker alleges that Sachdev admitted that Barker's reclassification was a means by which defendants could avoid paying payroll taxes, and that Barker told Sachdev he would not participate in anything illegal and thereafter requested to see his sales invoices to comply with his own tax reporting requirements. Barker sufficiently allege that he voiced opposition to defendants' alleged scheme to avoid paying taxes, which is illegal, and this opposition ultimately led to his termination. *See* 26 U.S.C. § 2702; 35 Ill. Comp. Stat. 5/1301; *see also Russ* v. *Pension Consultants Co.,* 538 N.E.2d 693, 697–98 182 Ill. App. 3d 769, 131 Ill. Dec. 318, (1989) ("Illinois has an interest in the enforcement of the federal tax law because federal tax records could also mean the falsification of state tax records, since the legislature has adopted the federal taxable income as the starting point for calculating the state corporate income tax."). By alleging retaliation in violation of his reporting a matter running afoul of Illinois public policy to his employer, Barker adequately pleaded a claim for retaliatory discharge and APL's motion to dismiss count I is thus denied.[7]

## III. IWA Claim (Count II)

Barker alleges that he is entitled to recovery under the IWA for refusing to participate in defendants' activity that allegedly attempted to circumvent federal and state tax laws. Defendants argue that Barker never refused to participate in alleged illegal activity and thus cannot recover under the IWA.

---

[7] Defendants raise for the first time in their reply brief that Barker failed to plead his retaliatory discharge claim with particularity under Rule 9(b) as his allegations were premised on fraud. *See* Fed. R. Civ. P. 9(b); *Borsellino* v. *Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). While arguments raised for the first time in a reply brief are generally waived, *see Dexia Credit Local* v. *Rogan*, 629 F.3d 612, 625 (7th Cir. 2010), defendants' argument also fails on the merits. Even if Barker's allegations regarding defendants' violation of criminal law based on tax evasion evoked Rule 9(b), Barker sufficiently pleaded the who, what, where, when, and how to satisfy the rule. Namely, Barker alleges that, in October 2012, Sachdev stated that he reclassified Barker's position to avoid payroll tax obligations, and after Barker raised concerns about reporting his personal income for tax purposes, Sachdev terminated his employment in November 2012.

The IWA protects employees "*refusing to participate* in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 Ill. Comp. Stat. 174/20 (emphasis added). To state a claim under the IWA, a plaintiff must allege that "(1) he refused to participate in an activity that would result in a violation of a state or federal law, rule or, regulation and (2) his employer retaliated against him because of that refusal." *Sardiga*, 948 N.E. 2d at 656–57. The Seventh Circuit construed the phrase "refusing to participate" to condition recovery under the IWA on a cognizable refusal by the employee to participate in illegal activity and resulting termination of employment. *See Robinson* v. *Alter Barge Line, Inc.,* 513 F.3d 668, 670 (7th Cir. 2008). In *Sardiga*, the Illinois appellate court held that the phrase "refusing to participate" unambiguously limited recovery to plaintiffs who actually refuse to participate in illegal activities; a plaintiff who participates in such activity cannot recover under the IWA. 948 N.E.2d 652, 657, 409 Ill. App. 3d 56, 350 Ill. Dec. 372 (2011) (holding that "'refusing means refusing; it does not mean 'complaining' or 'questioning'").

Barker alleges that he objected to and questioned Sachdev's decision to reclassify his employment status. Because Barker's status as an independent contractor required that he report and pay taxes on all his earnings, Barker demanded information from defendants documenting his sales so that he could prepare invoices to APL. Two days later, defendants terminated Barker. While Barker may have initially accepted commissions, he told defendants that the new payment structure did not fully reflect his taxable income and that he would not participate in any payment arrangement that was illegal. Defendants then terminated Barker's employment within a matter of days. These allegations suffice to state a claim under section 20 of the IWA and APL's motion to dismiss count II is thus denied. *See Beers* v. *E.R. Wagner Mfg. Co.,* No. 12 C 8888, 2013 WL 1679403, at *4 (N.D. Ill. April 17, 2013) (plaintiff successfully

pleaded a claim under section 20 of the IWA by alleging that he refused participation in an activity that would violate the law and he was fired as a result).

## IV. IWPCA Wage Claim (Count III)

Barker alleges that defendants failed to pay him the total compensation due under the parties' agreement in violation of the IWPCA. Defendants argue that Barker's claim is moot and inadequately pleaded as no agreement existed between the parties.

Defendants first argue that Barker's claim is moot because he received wages and a final paycheck in February 2013. Barker, however, contends that he is still owed part of his annual salary of $225,000 from October 2012 through the date of his termination in November 2012 and commissions that defendants agreed, but failed, to pay after his employment reclassification. Accordingly, because Barker alleges that he has not received the entire amount he claims defendants agreed to pay him, his claim is not moot. *See Williams-Green* v. *J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 380 (N.D. Ill. 2011) ("Once a party has received the relief it sought, its claim becomes moot and a federal court lacks subject matter jurisdiction over it."); *Krieger* v. *Adler, Kaplan & Begy*, No. 94 C 7809, 1997 WL 323827, at *10 (N.D. Ill. June 11, 1997) (dismissing allegations under IWPCA as moot for expenses that were paid).

Second, defendants argue that the IWPCA does not establish an independent right to wages and Barker's failure to allege an agreement dooms his IWPCA claim. The IWPCA provides a cause of action to employees "for the timely and complete payment of earned wages or final compensation without retaliation from employers." *Miller* v. *Kiefer Flooring, Inc.*, 739 N.E. 2d 982, 987, 317 Ill. App. 3d 370, 251 Ill. Dec. 49 (2000). The IWPCA requires that employers pay employees at least twice a month all wages earned during that pay period. 820 Ill. Comp. Stat. 115/3. The IWPCA defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement" and includes

commissions. 820 Ill. Comp. Stat. 115/2. The IWPCA further provides that employers "shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 Ill. Comp. Stat. 115/5.

The IWPCA's definition of agreement requires only the manifestation of mutual assent. *See Hess* v. *Kanoski & Assoc.*, 668 F.3d 446, 452 (7th Cir. 2012); *see also Wharton* v. *Comcast Corp.*, 912 F. Supp. 2d 655, 659 (N.D. Ill. 2012) ("Illinois courts have held that an employment agreement need not be a formally negotiated contract, and that parties may enter into an agreement without the formalities and accompanying legal protections of a contract.") (internal quotation marks and alterations omitted); *Landers-Scelfo* v. *Corporate Office Sys., Inc.*, 827 N.E. 2d 1051, 1067, 356 Ill. App. 3d 1060, 293 Ill. Dec. 170 (2005) ("An employment agreement need not be a formally negotiated contract."). To state a claim under the IWCPA, the plaintiff must allege the existence of an agreement substantiating entitlement to the wages and compensation sought. *See Dominquez* v. *Micro Ctr. Sales Corp.*, No. 11 C 8202, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012).

Barker alleges that defendants agreed upon his initial hiring to pay Baker an annual salary of $90,000. In connection with agreement, Barker received salary increases, and in October 2012, Barker's annual salary was $225,000 at which time defendants unilaterally changed Barker's compensation to one based on commissions. As a result, Barker alleges that he received lower wages than he was due under the parties' agreement. Barker further alleges that defendants also failed to pay him the full amount of commissions after his reclassification. Although defendants argue that Barker's alleged agreement upon his initial hire did not set forth the contours of his right to compensation, Barker alleges that his continued employment and compensation were premised on that agreement. At this stage, and taking the IWPCA's broad

15

definition of agreement into account, Barker alleges the mutual assent between the parties giving rise to an agreement supporting his claim for unpaid wages and compensation due under the IWPCA. *See Horowitz* v. *Animal Emergency & Treatment Ctrs. of Chicago, LLC*, No. 12 C 2561, 2012 WL 3598807, at *8 (N.D. Ill. Aug. 20, 2012) ("Under the federal notice pleading standards, [the plaintiff] has sufficiently alleged an agreement under the IWPCA by stating that after her written agreement expired, the parties agreed to extend her current employment arrangement providing for a salary of $155,000 a year."); *Zabinsky* v. *Gelber Grp., Inc.*, 807 N.E. 2d 666, 671, 347 Ill. App. 3d 243, 283 Ill. Dec. 61 (2004) ("To require an employee to have a valid, enforceable contract before invoking the [IWPCA] would render the [IWPCA] surplusage.").[8] Accordingly, defendants' motion to dismiss Barker's count III is denied.

## V.     IWPCA Retaliation Claim (Count IV)

Barker also alleges a claim under IWPCA for retaliation in that his objection to defendants' failure to comply with the IWPCA led to his dismissal. Defendants argue that Barker never referenced the IWPCA in his alleged complaints to Sachdev and thus could not have been terminated in retaliation for invoking the IWPCA. The IWPCA provides a cause of action for employees who suffer retaliation from employers for complaining about their failure to make payments pursuant to the IWPCA. *See* 820 Ill. Comp. Stat. 115/14(c).[9] Barker alleges that defendants terminated his employment not because he asked and failed to receive back pay due under the IWPCA, but rather because he opposed their alleged scheme to bypass paying

---

[8] Although Barker's allegations that he is entitled to both the unpaid portion of his yearly salary in addition to commissions after his employment reclassification may ultimately prove to be duplicative, Barker is entitled to plead in the alternative. *See* Fed. R. Civ. P. 8(d)(2).

[9] An earlier version of section 14(c) of the IWPCA provided only a criminal penalty under Illinois law for retaliation against an employee for protesting violations of the statute. Courts were unwilling to read a private cause of action into the statute. *See Skelton* v. *Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1078 (N.D. Ill. 2005); *McGrath* v. *CCC Information Servs., Inc.*, 731 N.E. 2d 384, 393, 314 Ill. App. 3d 431, 246 Ill. Dec. 856 (2000). Effective January 1, 2011, the Illinois General Assembly amended the statute providing a private cause of action to employees for retaliation under the IWPCA. *See* P.A. 96-1407, § 10.

payroll taxes and asked for documentation substantiating his sales. Accordingly because Barker did not allege retaliation in violation of his request for compensation under the IWPCA, he cannot maintain a claim for IWPCA retaliation. Accordingly, defendants' motion to dismiss count IV is granted.

## VI.     Breach of Contract Claim (Count V)

Barker last alleges that APL breached the agreement entered by the parties upon Barker's hire. Defendants argue that Barker was an at-will employee who had no contract, and assuming one existed, no breach occurred.

Under Illinois law, employment agreements are presumed to be at will such that they are terminable at any time by the employer or employee. *Kalush* v. *Deluxe Corp.*, 171 F.3d 489, 492 (7th Cir. 1999). To overcome this presumption, a plaintiff has the burden of demonstrating that the parties contracted otherwise. *Taylor* v. *Canteen Corp.*, 69 F.3d 773, 782 (7th Cir. 2011). A plaintiff can establish a breach of contract by alleging "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson–Smith & Assoc., Inc.* v. *Nahamani Family Serv. Ctr., Inc.,* 752 N.E.2d 33, 43, 323 Ill. App. 3d 15, 256 Ill. Dec. 488 (2001).

Defendants argue that Barker's employment was at-will such that he could be terminated at any time. Barker, however, alleges that defendants agreed upon hiring him in 2010 to pay him an annual salary of $90,000. In connection with that agreement, Barker's yearly salary rose to $225,000 by September 2012. In October 2012, defendants unilaterally changed that agreement by reclassifying Barker's employment status, and in doing so, failed to pay Barker the full amount of his yearly salary. Barker sufficiently alleged the existence of an agreement and a resulting breach, which is all that is necessary to state a claim for breach of contract. *See Axiom Ins. Managers Agency, LLC* v. *Indemnity Ins. Corp.*, No. 11 C 2051, 2011 WL 3876947, at *12

(N.D. Ill. Sept. 1, 2011) ("A plaintiff need not plead all the specific details underlying an alleged breach of contract to state a claim."); *AT&T Corp.* v. *Van Ru Credit Corp.*, No. 10 C 7059, 2011 WL 211574, at *1 (N.D. Ill. Jan. 21, 2011) ("[The plaintiff] alleges the existence of a specific contractual relationship between itself and [the defendant]; that is sufficient to survive a motion to dismiss.").

Defendants' further argue that the lack of a term specifying the duration of Barker's employment with APL highlights that any employment agreement between the parties was at will and terminable at any time. *See*, *e.g.*, *A.T.N., Inc.* v. *McAirlaid's Vliesstoffe GmbH & Co. KG,* 557 F.3d 483, 486 (7th Cir. 2009) ("[C]ontracts of indefinite duration are generally deemed terminable at will be either party."). The alleged breach here, however, is not premised on defendants terminating Barker's employment; rather, the breach stems from defendants' alleged failure to compensate Barker as a salaried employee and for commissions after his reclassification as an independent contractor. Accordingly, that Barker did not allege that the agreement specified a duration of employment does not defeat his breach of contract claim seeking compensation for work performed prior to his termination. *See*, *e.g.*, *Colosi* v. *Electri–Flex Co.,* 965 F.2d 500, 504 (7th Cir.1992) ("Employment at will is a contractual relationship, one which entitles the employee to all wages and other benefits that he has earned, *i.e.*, that accrued before he was terminated."); *Kamboj* v. *Eli Lilly & Co.*, No. 05 C 4023, 2007 WL 178434, at *6 (N.D. Ill. Jan. 18, 2007) ("[T]he Court agrees with Plaintiff that she may assert a claim for breach of the *other terms or conditions* of her at-will employment contract, even though she would not be able to assert a claim for *termination* of that contract, or for a unilateral modification of that contract past any time of her acceptance of it.").

Defendants last argue that Barker's acceptance of payment under the commission pay structure in October 2012 modified any agreement (assuming one existed) between the parties.

*See, e.g.*, *Doyle* v. *Holy Cross Hosp.*, 682 N.E. 2d 68, 71–72, 289 Ill. App. 3d 75, 224 Ill. Dec. 507 (1997) ("When an employment agreement is terminable at will, it may be modified by the employer as a condition of employment."). Under that modified agreement, argue defendants, Barker received everything to which he was entitled thus defeating his breach of contract claim. Barker, however, alleges that defendants still failed to pay him the entire amount of the commissions that he earned after the reclassification. Whether Barker's conduct modified the parties' agreement does not preclude his breach of contract claim. That is a factual question, which will be resolved through discovery.[10] *Cf. Czpala* v. *Commerz Futures, LLC*, 114 F. Supp. 2d 715, 719 (N.D. Ill. 2000) ("Pleadings must only serve to give notice of the claim; the development of legal theories and the correlation of facts to theory come later in the process. Moreover, a court not dismiss a claim if any facts that might be established within those allegations would permit a judgment for the plaintiff.") (internal citation and quotations marks omitted). Accordingly, APL's motion to dismiss count V is denied.

## CONCLUSION

For the foregoing reasons, Sachdev's motion to dismiss for lack of personal jurisdiction [dkt. 12] is denied and defendants' motion to dismiss for failure to state a claim [dkt. 14] is granted as to count IV and denied as to counts I, II, III, and V. This case will be called for a scheduling conference on September 17, 2013 at 8:30 a.m.

Dated: August 14, 2013                                        ENTER:

                                                                                                                                   _____
                                                                                              JOAN HUMPHREY LEFKOW
                                                                                              United States District Judge

---

[10] Both cases that defendants rely upon – *Schoppert* v. *CCTC Int'l, Inc.*, 972 F. Supp. 444 (N.D. Ill. 1997) and *Bommelman* v. *Transfer Print Foils, Inc.*, No. 97 C 2082, 2000 WL 816792 (N.D. Ill. June 22, 2000) – for their argument that Barker's conduct after his employment reclassification modified any agreement were decided at summary judgment and are thus unavailing in resolving the present motion to dismiss.